ALDEN, Plaintiff and Respondent, v. MATZ, Defendant: CARLSON and others, Defendants and Appellants.*

*November 2—December 1, 1959.*

* Motion for rehearing denied, with $25 costs, on February 2, 1960.

486

For the appellants there was a brief by *Gherty & Ellefsen* of Hudson, attorneys, and *Eugene H. Fish* of Balsam Lake of counsel, and oral argument by *Mr. Fish* and *Mr. Lawrence P. Gherty*.

For the respondent there was a brief by *D. E. Jensen* of Luck, attorney, and *E. D. Jensen* of Grantsburg of counsel, and oral argument by *D. E. Jensen*.

BROADFOOT, J. It is the first contention of the defendants who appealed that Carlson was not negligent in stopping his school bus on the west half of the paved portion of the highway. They state that sec. 85.16 (12), Stats. 1955, permitted Carlson to stop where he did. On the other hand, the plaintiff contends that said section conflicts with the parking statute, sec. 85.19 (1), and that both sections must be complied with. The two sections read as follows:

85.16 (12) *"Stopping for school buses loading or unloading pupils.* (a) The driver of a vehicle upon a street or highway, upon meeting or overtaking from the front or rear any school bus which has stopped on the street or highway for the purpose of loading or unloading any school child or children, shall stop the vehicle immediately upon the display of flashing red signals by the school-bus driver and shall remain stopped until the school-bus driver extinguishes the flashing red signals. The driver of a school bus shall not use the flashing red signals in the built-up areas of cities, villages, or towns where passengers are to be loaded or unloaded from a curb or sidewalk or in special bus-loading areas. The provisions of this subsection do not apply to vehicles proceeding in the opposite direction of a school bus on the opposite side of a dividing highway.

"(b) Every school bus shall be equipped with flashing red signals of a type, and actuated in a manner approved by the state superintendent and the commissioner of motor vehicles. When such a vehicle is being used upon a public highway for purposes other than the actual transportation of children as provided in secs. 40.53 to 40.57, the flashing red signals shall not be used and all markings thereon indicating it is a school bus shall be removed or concealed."

85.19 (1) *"Parking on highway.* No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than 15 feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction along such highway."

Sec. 85.16 (12), Stats., was enacted after sec. 85.19 (1). In construing these two statutes we conclude that although sec. 85.19 (1) does not expressly exclude school buses from its operation, such subsequent enactment of 85.16 (12) has

that effect. The underlying objective of the provisions contained in sec. 85.19 (1) requiring vehicles to stop off the traveled roadway, if practical, and to leave at least 15 feet of usable roadway, is to insure open travel lanes for moving traffic. In the case of a school bus stopping on the highway displaying its flashing red signals, all traffic moving in both directions must stop. Although we hold that sec. 85.19 (1), the parking statute, does not apply to a school-bus driver, we agree with the conclusion of the trial court expressed in its memorandum opinion that a school-bus driver is still required to use ordinary care in determining whether he can stop with safety on the paved portion of the highway.

It is customary for the drivers of school buses to stop on the paved portion of the highway. Under normal conditions that probably can be done with safety. The statute places the burden upon approaching drivers to stop. However, there are situations that call for a different procedure. The driver of a school bus should not stop upon the paved portion of the highway when it is practical to stop on the shoulder over the crest of hills, or on blind curves, and when driving conditions are hazardous because of road and weather conditions. It is possible that drivers of other vehicles may not be heard to complain if a school-bus driver stops at any point upon the paved portion of the highway but the safety of third persons, including passengers in both vehicles, is to be considered.

On the morning of the accident, for some distance on each side of the site thereof, there was a dense fog and the highway was slippery because of frost or ice. Visibility was poor. Under the circumstances it is apparent that jury questions were presented as to whether or not the bus driver was negligent with respect to the position the school bus occupied upon the highway and whether the same was causal.

It is the next contention of the appellants that the plaintiff was negligent as a matter of law. With this contention

we agree. The testimony shows that the weather was cold and the fog condensed upon the windshield. Although the windshield wipers were in operation upon the Matz vehicle, lookout through the windshield was difficult. Matz stopped the truck several miles north of the point of the accident and he and the plaintiff cleaned the windshield. They shared the duty of lookout. Matz was watching the center line of the highway and plaintiff was looking ahead. He testified that he could see ahead on the highway itself only about 20 feet, although he could see lights 40 to 50 feet ahead. When Carlson stopped the school bus the flashing red signals on the top of the bus were in operation, the taillights were on, and he put his foot on the brake which activated large stop lights on the rear of the bus. His stated reason for so doing was that he felt he should give more warning because of the serious weather conditions. He thought there was a possibility that someone might be coming from the rear and not see him. Plaintiff testified that the only lights he saw were the taillights on the rear of the bus, which were the smallest lights thereon and were the lowest of the several lights on the rear of the bus. This indicates that the plaintiff was looking down at the road instead of looking ahead for lights whereby he could have seen the bus sooner.

Both the plaintiff and Matz testified that their vehicle traveled 40 to 45 miles per hour until they struck the fog, and then their speed was decreased about 10 miles an hour. Both of them later changed their testimony to say their speed was 25 miles an hour. If we accept 50 feet as the maximum distance they could see lights ahead and a minimum speed of 25 miles per hour, it is apparent, in view of the slippery condition of the highway, that Matz would be unable to stop in that distance and at that speed, assuming that his reaction time would be that of the normal driver. Plaintiff never protested at the speed at which Matz was driving, although he testified he was concerned about his safety.

We can only conclude from the record before us that the plaintiff was negligent as to lookout and in failing to protest at the speed at which Matz was driving, and that his negligence was causal as a matter of law. This will require a new trial. If a jury again finds that Carlson was negligent in stopping his school bus where he did, then the jury must apportion the negligence between Carlson, Matz, and the plaintiff.

The appellants also contend that the damages awarded to the plaintiff were excessive and not supported by the evidence. Because of the vigorous challenge on the amount of damages awarded, we have concluded to order a new trial on all issues.

*By the Court.*—Judgment reversed. Cause remanded for a new trial on all issues.